Robert Mackey (SBN 125961)
bobmackeyesq@aol.com
**LAW OFFICES OF ROBERT MACKEY**
660 Baker Street
Building A, Ste. 201
Costa Mesa, CA 92626
Tel: (412) 370-9110

[Additional Counsel on Signature Page]
Attorneys for Plaintiff and Others Similarly Situated

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

SHARON SHAPIRO, individually and on behalf of all others similarly situated,

Plaintiff,

vs.

NEWREZ, LLC d/b/a SHELLPOINT MORTGAGE SERVICING,

Defendant.

Case No.:

**CLASS ACTION COMPLAINT**

**(1) Violation of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq*;**
**(2) Violation of the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq*;**
**(3) Violation of California's Unfair Competition Law, Cal. Bus. And Pro. Code § 17200, *et seq*;**
**(4) Violation of California's Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788, *et seq*.**

**DEMAND FOR JURY TRIAL**

Plaintiff, Sharon Shapiro (hereinafter referred to as "Shapiro" or "Plaintiff"), by and through her undersigned counsel, brings this class action lawsuit against Defendant NewRez, LLC d/b/a Shellpoint Mortgage Servicing ("Shellpoint" or "Defendant"), and alleges the following:

**I.**

**NATURE OF THE ACTION**

1. This is a class action arising from Defendant Shellpoint's failure to timely provide mortgage payoff statements and payoff-related information after written requests.

2. Federal law is straightforward. A creditor or servicer of a home loan must send an accurate payoff balance within a reasonable time, and in no event more than seven business days, after receiving a written request from or on behalf of the borrower. 15 U.S.C. § 1639g. Regulation Z similarly requires prompt payoff statements for closed-end consumer credit transactions secured by a dwelling. 12 C.F.R. § 1026.36.

3. RESPA and Regulation X impose related obligations on mortgage servicers to acknowledge and respond to written notices of error and requests for information concerning loan servicing, including requests that identify the borrower, identify the loan account, and state the information requested or the servicing error believed to have occurred. 12 U.S.C. § 2605; 12 C.F.R. §§ 1024.35-1024.36.

4. California law likewise requires the timely preparation and delivery of payoff demand statements relating to California real-property secured obligations. California Civil Code § 2943.

5. Plaintiff brings this action individually and on behalf of similarly situated borrowers, successors in interest, executors, trustees, and estate representatives whose written requests for payoff statements or payoff-related information were not timely fulfilled by Defendant.

6. Plaintiff alleges that Defendant, acting as mortgage servicer, failed to timely send or otherwise provide payoff information after receiving Plaintiff's written requests concerning a mortgage loan secured by the borrower's primary residence.

7. Plaintiff further alleges that Defendant later asserted that payoff statements had been sent on earlier dates, but Plaintiff did not receive those purported statements by email or regular mail.

8. As a result of Defendant's conduct, Plaintiff was delayed in obtaining the information necessary to satisfy the loan, resulting in continued accrual of interest and related charges before payoff.

9. During the period in which Plaintiff was requesting payoff information and Defendant failed to provide an accurate payoff statement, Plaintiff continued to pay amounts charged on the loan, including interest and escrow charges.

10. Plaintiff asserts claims under 15 U.S.C. § 1639g, 12 U.S.C. § 2605, 12 C.F.R. § 1024.36, California Business and Professions Code § 17200 *et seq.*, and the California Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788 *et seq*.

11. Plaintiff seeks damages, restitution, declaratory relief, injunctive relief, attorneys' fees, costs, and all other available relief.

## II.

## **JURISDICTION AND VENUE**

12. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because this action arises under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq., including 15 U.S.C. § 1639g, the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 et seq., and Regulation X ("Reg X") 12 C.F.R. § 1024.36.

13. This Court has supplemental jurisdiction over Plaintiff's California-law claims under 28 U.S.C. § 1367 because they arise from the same transactions, occurrences, and common nucleus of operative facts as the federal claims.

14. This Court has personal jurisdiction over Defendant because Defendant transacts business in California, services mortgage loans in California, and committed the acts alleged herein in California and affecting California residents.

15. Venue is proper in this District under 28 U.S.C. § 1391 because the real property securing the subject loan is located in this District and a substantial part of the events or omissions giving rise to the claims occurred in this District.

## III.

## THE PARTIES

16. Plaintiff Sharon Shapiro is a resident of California.

17. Plaintiff is the duly authorized Executor and sole Trustee of the Estate of Charles Joel Shapiro. Plaintiff's father, Charles Joel Shapiro, died in February 2025.

18. The real property securing the subject loan is located at 525 Aqueduct Ct, Simi Valley, California 93065.

19. The encumbered home was Charles Joel Shapiro's primary residence.

20. Defendant Shellpoint is a foreign limited liability company organized under the laws of the State of Delaware that maintains its headquarters and principal place of business at 1100 Virginia Drive, Suite 125, Fort Washington, PA.

21. Defendant Shellpoint is a mortgage servicer that conducts business throughout the United States, including in California. Shellpoint's correspondence identifies Newrez LLC d/b/a Shellpoint Mortgage Servicing as a debt collector and mortgage servicer. Shellpoint was, at all relevant times, the servicer of the subject mortgage loan but is not alleged, for purposes of this pleading, to have owned the loan.

22. Plaintiff is informed and believes, and on that basis alleges, that Defendant regularly services residential mortgage loans in California and throughout the United States.

## IV.

## FACTUAL ALLEGATIONS

23. On or about September 12, 2023, Charles Joel Shapiro, Trustee of the Charles Joel Shapiro Special Trust Dated April 17, 2017, signed a promissory note (the "Note") and accompanying deed of trust mortgage agreement (the "Mortgage") with non-party Change Lending, LLC for $1.44 million secured by the property at issue, Charles Joel Shapiro's primary residence. (collectively, the "Loan"). A copy of the Mortgage is attached as **Exhibit 1**.

24. The recorded Loan documents include a 1–4 Family Rider, Planned Unit Development Rider, Balloon Rider, and Interest-Only Rider.

25. Although Defendant's documents included the inaccurate descriptor "Commercial," the recorded loan documents and the nature of the collateral reflect a loan secured by a 1–4 family residence that served as Charles Joel Shapiro's primary residence. Accordingly, the Loan was for consumer purposes.

26. At all relevant times, Defendant acted as servicer of the subject loan.

27. After Charles Joel Shapiro's death in February 2025, Plaintiff sought a payoff statement so that the loan could be paid off.

28. Plaintiff provided Defendant with information reflecting her authority in connection with the estate and trust, and identified herself to Defendant as the duly authorized Executor and sole Trustee of the Charles Joel Shapiro Estate. Plaintiff provided Shellpoint with documentation of her father's death and her authority, including the death certificate and documents supporting her status as executor and successor trustee.

29. Plaintiff requested payoff information in that representative capacity for the purpose of satisfying the loan encumbering estate property.

30. On June 3, 2025, Plaintiff sent an email to Defendant requesting a "payoff quote, statement and payment instructions."

31. In that June 3, 2025 email, Plaintiff stated that she was the "duly authorized Executor and sole Trustee of the Charles Joel Shapiro Estate."

32. In that same email, Plaintiff stated that she had already made multiple prior requests through Defendant's website and by telephone.

33. Plaintiff's June 3 email stated that the estate was financially ready and able to remit full payment immediately upon receipt of the requested information.

34. On June 4, 2025, Plaintiff sent a written letter repeating the payoff request, identifying the Loan and Property, identifying her authority, enclosing supporting documentation, and demanding a complete and timely payoff quote and payment instructions.

35. The June 4, 2025 letter requested that the payoff information be sent to Plaintiff's email address and mailing address.

36. The June 4, 2025 letter was sent to Defendant's designated address for notices of error and requests for information.

37. USPS tracking records show that the June 4, 2025 certified mailing was delivered to an agent in Greenville, South Carolina on June 24, 2025.

38. Plaintiff's June 4 letter qualified as a written request for a payoff balance from or on behalf of the borrower under 15 U.S.C. § 1639g.

39. Plaintiff's June 4 letter also qualified as a request for information and notice of error under RESPA and Regulation X because it identified the borrower, the loan number, the Property, the servicing information requested, and the servicing error: Shellpoint's failure to provide the payoff quote and payment instructions despite repeated requests.

40. Defendant did not send or otherwise provide Plaintiff with a payoff statement within 7 business days after June 24, 2025.

41. Shellpoint did not timely acknowledge, investigate, correct, or adequately respond to Plaintiff's notice of error and request for information.

42. During the period in which Plaintiff was requesting payoff information and Defendant had not provided an accurate payoff statement, Plaintiff continued to pay amounts charged on the loan, including interest and escrow charges. The monthly payment was approximately **$15,512.80**, including approximately **$12,600.00** in interest.

43. From approximately February 2025 through October 2025, Plaintiff and the estate paid or incurred approximately **$113,400.00** in interest and approximately **$25,091.30** in escrow-related payments, for a total estimated payment burden of approximately **$138,591.30** during the period in which Plaintiff sought but did not receive usable payoff information.

44. Plaintiff was harmed by Defendants' delay, including through additional interest, loss of use of funds, expenses associated with repeated requests, time spent attempting to obtain payoff information, and the need to file regulatory complaints and retain counsel.

45. On September 30, 2025, Plaintiff's husband, Ryan Fox, on Plaintiff's behalf, sent an email to a Newrez executive stating that, since February 2025, Plaintiff had submitted multiple written requests for an official payoff quote and had not received one.

46. That September 30, 2025 email further stated that the delay caused interest to continue accruing, and Defendant's later provided payment history reflected monthly interest charges of $12,600.00 before payoff.

47. On or about October 1, 2025, because Shellpoint had not provided a usable payoff quote and instructions to Plaintiff despite repeated requests, a payoff was tendered based on an estimate.

48. On November 6, 2025, Defendant sent a written response to Plaintiff's September 30, 2025 email.

49. In that November 6, 2025 response, Defendant stated that payoff quotes had been sent on April 24, 2025, May 6, 2025, and July 23, 2025.

50. Defendant attached what purported to be payoff statements dated April 24, 2025, May 6, 2025, and July 23, 2025 to its November 6, 2025 response.

51. Defendant's November 6, 2025 response also stated that the loan was paid in full effective October 1, 2025.

52. Defendant further stated that it would not reimburse the accrued interest Plaintiff sought to recover.

53. The payment history attached to Defendant's November 6, 2025 response reflects monthly interest charges of $12,600.00 and reflects payoff on October 1, 2025.

54. Plaintiff attests herein that she did not receive any of the payoff statements Defendant claimed to have sent in April, May, or July 2025, whether by email or regular mail.

55. Based on Defendant's own chronology, Plaintiff's nonreceipt, and Defendant's failure to provide payoff information in response to Plaintiff's June 2025 written requests, Plaintiff alleges that Defendant did not timely send or otherwise provide the requested payoff statement after written request.

56. Plaintiff further alleges, on information and belief, that Defendant used centralized servicing systems and standardized procedures to log, generate, and transmit payoff statements for loans it serviced, including the payoff statements attached to Defendant's November 6, 2025 response.

57. Plaintiff further alleges, on information and belief, that whether Defendant timely sent payoff statements can be determined through common evidence maintained in the ordinary course of servicing, including request logs, servicing notes, correspondence logs, image records, and mail or electronic transmission records.

58. Plaintiff is informed and believes, and on that basis alleges, that Defendant's handling of Plaintiff's requests was carried out through centralized policies, procedures, or servicing practices that also affected other borrowers and successors in interest.

59. Plaintiff would have caused the loan to be paid sooner had Defendant timely provided a payoff statement and payment instructions in response to her written requests.

**ALLEGATIONS REGARDING DEFENDANT'S ASSERTION THAT PRIOR PAYOFF STATEMENTS WERE SENT**

60. Defendant has asserted that payoff statements were sent on April 24, 2025, May 6, 2025, and July 23, 2025.

61. Plaintiff does not concede that Defendant timely transmitted those payoff statements.

62. Plaintiff alleges that Defendant's later production of payoff statements dated April 24, 2025, May 6, 2025, and July 23, 2025 does not establish that those statements were timely sent or otherwise provided to Plaintiff when dated.

63. Plaintiff further alleges that the timing, method, and fact of transmission of any such payoff statements are matters ascertainable from Defendant's own servicing records, correspondence logs, vendor records, and electronic transmission records.

64. To the extent Defendant contends that payoff statements were timely sent, Plaintiff alleges that such contention presents a common merits issue capable of resolution through standardized proof.

**V.**

**CLASS ACTION ALLEGATIONS**

65. Plaintiff brings this action under Fed. R. Civ. P. 23 on behalf of herself and all others similarly situated.

66. Plaintiff proposes the following classes, subject to amendment after discovery:

**TILA Nationwide Payoff Delay Class:**

All persons in the United States who, during the applicable limitations period, had a residential mortgage loan serviced by Defendant, submitted a written request for a payoff statement recorded in Defendant's servicing system, and for whom Defendant's records do not show transmission of a payoff statement within 7 business days of receipt of the request.

**California Payoff Delay Subclass:**

All persons in the California who, during the applicable limitations period, had a residential mortgage loan serviced by Defendant, submitted a written request for a payoff statement recorded in Defendant's servicing system, and for whom Defendant's records do not show transmission of a payoff statement within 7 business days of receipt of the request.

**RESPA/Regulation X Nationwide Class:**

All persons in the United States who, during the applicable limitations period, had a residential mortgage loan serviced by Defendant, sent a written request for payoff information or other payoff-related information to Defendant's designated address for notices of error and requests for information, and for whom Defendant's records do not show a timely response.

**California Subclass:**

All persons in California who, during the applicable limitations period, had a residential mortgage loan serviced by Defendant, sent a written request for payoff information or other payoff-related information to Defendant's designated address for notices of error and requests for information, and for whom Defendant's records do not show a timely response.

**California Successor Subclass:**

All successors in interest, executors, administrators, trustees, or estate representatives in California who, during the applicable limitations period, identified themselves to Defendant in such capacity, sent a written request for payoff information or a payoff statement to Defendant's designated address for notices of error and requests for information regarding a residential mortgage loan serviced by Defendant, and for whom Defendant's records do not show a timely response.

67. Plaintiff and Class members reserve the right to amend the Class definitions as discovery proceeds and to conform to the evidence. Excluded from the Classes are Defendants, and any subsidiary or affiliate of Defendants, and the directors, officers and employees of Defendants or their subsidiaries or affiliates, and members of the federal judiciary.

68. Under Fed. R. Civ. P. 23(a)(1), the proposed class is made up of at least 40 persons, the joinder of whom are impracticable except by means of a class action. The disposition of the claims in a class action will benefit both the parties and the Court. Specifically, numerosity is satisfied because Plaintiff is informed and believes Shellpoint services large numbers of residential mortgage loans nationwide and in California. The precise number of class members is within Defendants' records and can be identified through objective data, including payoff-request logs, correspondence management systems, servicing notes, mail records, and response-date records.

69. The proposed class is ascertainable because it is defined by reference to objective criteria. In addition, and upon information and belief, the names and addresses of all members of the proposed class can be identified in business records maintained by Defendants.

70. In conformance with Fed. R. Civ. P. 23(a)(2), all Class members' claims (including Plaintiff's) are unified in that they arise from the same improper charging and collection practices arising out of materially identical circumstances. Plaintiff's interests are coincident with, and not antagonistic to, those of the other members of the proposed class.

71. Consistent with Fed. R. Civ. P. 23(a)(3), Plaintiff is a member of the Class. Her claims are typical of all other Class Members. Specifically, Plaintiff's claims are typical of the claims of the proposed classes because Plaintiff and class members were subjected to the same or similar mortgage-servicing practices: failure to timely provide accurate payoff statements and failure to properly process related written servicing requests.

72. Plaintiff's claims arise from the same statutory duties and the same standardized servicing systems, policies, procedures, and records that apply to class members.

73. Consistent with Fed. R. Civ. P. 23(a)(4), Plaintiff will adequately represent the class because he has interests in common with the proposed Class Members and he has retained attorneys who are experienced in class action litigation.

74. Pursuant to Fed. R. Civ. P. 23(b)(3), there is a well-defined community of interest in the questions of law and fact involving and affecting the class to be represented by Plaintiff. Common questions of law and/or fact predominate over any questions affecting only individual members of the class. Common questions include, but are not limited to, the following:

a. Whether Defendant used standardized policies or procedures for processing payoff-statement requests and payoff-related written requests for information;

b. Whether Defendant's records identify when written payoff requests and payoff-related written requests for information were received;

c. Whether Defendant's records identify when payoff statements or written responses were generated and when they were transmitted;

d. Whether Defendant failed to provide payoff statements within the time required by 15 U.S.C. § 1639g;

e. Whether Defendant failed to timely respond to payoff-related written requests for information sent to its designated address;

f. Whether Defendant engaged in unlawful business practices under California Business and Professions Code § 17200;

g. Whether Defendant engaged in unfair business practices under California Business and Professions Code § 17200;

h. Whether, on the facts ultimately established, Defendant engaged in unfair, deceptive, or misleading debt-collection conduct under the Rosenthal Act;

Whether Plaintiff and Class members were damaged or lost money or property as a result of Defendant's conduct; and;

i. The nature and extent of appropriate relief.

75. A class action is superior to individual actions because the core liability issues turn on Defendant's standardized procedures and records concerning receipt, generation, and transmission of payoff statements and responses to written requests, and because individual claims are comparatively small relative to the cost of litigating those issues separately.

76. Furthermore, individual litigation of all claims that might be asserted by all class members would produce such a multiplicity of cases that the judicial system, having jurisdiction of the claims, would remain congested for years. Class treatment, by contrast, provides manageable judicial treatment calculated to bring a rapid conclusion to all litigation of all claims arising out of the conduct of the Defendants.

77. At minimum, class certification is appropriate as to one or more issues under Fed. R. Civ. P. 23(c)(4), including Defendant's policies and practices for receipt, processing, generation, and transmission of payoff statements and responses to written requests.

## VI.

## CAUSES OF ACTION

### COUNT I
### VIOLATIONS OF THE TRUTH IN LENDING ACT
### 15 U.S.C. § 1639g

(On Behalf of Plaintiff, the TILA Nationwide Payoff Delay Class, and the California Payoff Delay Subclass)

78. Plaintiff repeats and realleges all preceding paragraphs as if fully stated herein.

79. Plaintiff brings this cause of action on behalf of herself and the members of the TILA Nationwide Payoff Delay Class, and the California Payoff Delay Subclass.

80. The subject Loan was a consumer home loan, secured by the borrower's primary residence and by a 1–4 family dwelling, and thus it is subject to 15 U.S.C. § 1639g.

81. Defendant was the servicer of the Loan within the meaning of TILA and Regulation Z.

82. Plaintiff submitted written requests for an accurate payoff balance and payoff instructions, including her June 3, 2025 email and June 4, 2025 written letter.

83. Defendant received Plaintiff's written request no later than June 24, 2025, as reflected by USPS delivery records for the June 4, 2025 letter.

84. Under 15 U.S.C. § 1639g, a creditor or servicer of a home loan must send an accurate payoff balance within a reasonable time, and in no case more than seven business days, after receiving a written request for the balance from or on behalf of the borrower.

85. Regulation Z imposes parallel duties concerning payoff statements for covered closed-end consumer credit transactions secured by a dwelling. 12 C.F.R. § 1026.36.

86. Defendant did not send or otherwise provide Plaintiff with an accurate payoff statement within 7 business days after June 24, 2025.

87. As a result of Defendant's failure to timely provide an accurate payoff statement, Plaintiff continued to pay interest and escrow charges during the period of delay.

88. Defendant therefore failed to provide an accurate payoff balance within the time required by 15 U.S.C. § 1639g.

89. As a direct and proximate result of Defendant's conduct, Plaintiff and class members suffered actual damages, including additional interest, fees, escrow payments, loss of use of funds, costs of repeated communications, and related consequential damages.

90. Plaintiff and the members of the TILA Nationwide Payoff Delay Class, and the California Payoff Delay Subclass seek all relief available under law.

**COUNT II**
**VIOLATIONS OF RESPA AND REGULATION X**
**12 U.S.C. § 2605 and 12 C.F.R. § 1024.36**
(On behalf of Plaintiff, the RESPA/Regulation X Nationwide Class, the California Subclass, and the California Successor Subclass)

91. Plaintiff repeats and realleges all preceding paragraphs as if fully stated herein.

92. Plaintiff brings this cause of action on behalf of herself and the members of the RESPA/Regulation X Nationwide Class, the California Subclass, and the California Successor Subclass.

93. Plaintiff sent written requests seeking payoff information and payment instructions relating to the servicing of the subject loan.

94. Plaintiff's June 4, 2025 written request was sent to Defendant's designated address for notices of error and requests for information.

95. Plaintiff alleges that her written requests sought information relating to servicing and payoff of the loan and were sufficient to trigger a response obligation under 12 U.S.C. § 2605 and 12 C.F.R. § 1024.36.

96. Plaintiff's June 4 letter also constituted a notice of error under 12 C.F.R. § 1024.35 because it identified the borrower and account and described Shellpoint's servicing error: failure to provide payoff information despite repeated requests.

97. Defendant was required to timely acknowledge the notice of error and request for information, conduct a reasonable investigation, correct the error or provide a reasonable explanation, and provide the requested information or a proper explanation of why the information was unavailable.

98. Defendant failed to timely and adequately respond to Plaintiff's notice of error and request for information.

99. As a direct and proximate result of Defendant's conduct, Plaintiff suffered actual damages, including, but not limited to, delay-related harm, additional interest accrual before payoff, continued payment of interest and escrow charges during the period of delay, and other charges as reflected in Defendant's own records.

100. Defendant's conduct reflects a pattern or practice of noncompliance because the same servicing systems and policies apply to payoff requests, notices of error, and requests for information submitted by borrowers and successors in interest across Defendant's servicing portfolio.

101. Plaintiff, and the members of the RESPA/Regulation X Nationwide Class, the California Subclass, and the California Successor Subclass seek all relief available under law.

## COUNT III
## VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW-UNLAWFUL, California Business and Professions Code § 17200 et seq.

(On behalf of Plaintiff, the California Subclass, and the California Successor Subclass)

102. Plaintiff repeats and realleges all preceding paragraphs as if fully stated herein.

103. Plaintiff brings this cause of action on behalf of herself and the members of the California Subclass, and the California Successor Subclass.

104. Defendant's acts and practices alleged above constitute unlawful business acts or practices as they have violated state and federal law as described herein.

105. Defendant engaged in unlawful business acts and practices by violating 15 U.S.C. § 1639g, 12 U.S.C. § 2605, and 12 C.F.R. § 1024.36.

106. Defendant's unlawful conduct caused Plaintiff and Class members to lose money or property, including by delaying payoff and thereby causing interest and related charges to continue accruing before payoff and requiring continued payment of interest and escrow charges during the period of delay.

107. Plaintiff, the California Subclass, and the California Successor Subclass seek restitution, injunctive relief, and declaratory relief to the extent such relief is available, including prospective relief directed at Defendant's policies and practices concerning payoff-statement requests and written requests for information.

**COUNT IV**
**VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW-UNFAIR, California Business and Professions Code § 17200 et seq.**
(On behalf of Plaintiff, the California Subclass, and the California Successor Subclass)

108. Plaintiff repeats and realleges all preceding paragraphs as if fully stated herein.

109. Plaintiff brings this cause of action on behalf of herself and the members of the California Subclass, and the California Successor Subclass.

110. Defendant engaged in unfair business acts and practices by failing to timely provide requested payoff statements and payoff-related information while interest and related charges continued to accrue and while Plaintiff continued making interest and escrow payments during the period of delay.

111. The injury to Plaintiff and Class members was substantial and not outweighed by countervailing benefits to consumers or competition.

112. The injury to Plaintiff and Class members was not one that borrowers or successors in interest could reasonably have avoided once Defendant failed to timely provide the requested payoff information.

113. Plaintiff, the California Subclass, and the California Successor Subclass seek restitution, injunctive relief, and declaratory relief to the extent such relief is available, including prospective relief directed at Defendant's policies and practices concerning payoff-related requests.

**COUNT V**
**VIOLATIONS OF THE ROSENTHAL FAIR DEBT COLLECTIONS ACT Cal. Civ. Code § 1788, et seq.**

(On behalf of Plaintiff, the California Subclass, and the California Successor Subclass)

114. Plaintiff repeats and realleges all preceding paragraphs as if fully stated herein.

115. Plaintiff brings this cause of action on behalf of herself and the members of the California Subclass, and the California Successor Subclass.

116. Defendant is a "debt collector" within the meaning of California Civil Code section 1788.2(c) because Defendant sent mortgage statements to Plaintiff and to the Class, Plaintiff and the class made mortgage payments to Defendant, Defendant accepted those payments, and Defendant's correspondence states that Defendant is a debt collector and seeks payment of the subject mortgage debt.

117. The monies allegedly owed by Plaintiff are a "debt" within the meaning of California Civil Code section 1788.2(d) because Plaintiff's promissory note secured by his real property is "money, property or their equivalent which is due or owing or alleged to be due or owing from a natural person to another person."

118. As alleged herein, and as set forth in detail above, Defendants have committed violations California's Rosenthal Fair Debt Collection Practices Act, California Civil Code section 1788 ("RFDCPA"), which prohibits, without limitation: making false, deceptive, or misleading representation or means in connection with the collection of any debt, and using unfair or unconscionable means to collect or attempt to collect any debt.

119. Defendant made a false, deceptive, or misleading representation to Plaintiff, when in connection with collection of the aforementioned subject mortgage debt and Plaintiff's efforts to satisfy it, Defendant represented in its November 6, 2025 response that payoff statements had been sent on April 24, 2025, May 6, 2025, and July 23, 2025.

120. Plaintiff did not receive those purported payoff statements by email or regular mail.

121. Plaintiff alleges that, to the extent the facts established in discovery or adjudication show that Defendant represented payoff statements had been sent while failing to timely provide payoff information necessary to satisfy the debt, such conduct constituted unfair, deceptive, or misleading conduct in connection with collection of consumer debt.

122. As a direct and proximate result of Defendant's conduct, Plaintiff suffered harm, including delayed payoff, resulting additional accrual of interest before payoff, and continued payment of interest and escrow charges during the period of delay

123. Pursuant to California Civil Code sections 1788.30 and 1788.17, Plaintiff, the California Subclass, and the California Successor Subclass are entitled to recover actual damages sustained as a result of Defendant's violations of the RFDCPA. Such damages include, without limitation, monetary losses and damages, and emotional distress suffered, which damages are in an amount to be proven at trial. In addition, pursuant to California Civil Code sections 1788.30 and 1788.17, because Defendant's violations of the RFDCPA were committed willingly and knowingly. Plaintiff, the California Subclass, and the California Successor Subclass are entitled to recover statutory damages of at least $1,000 per violation as provided for in the Act.

124. Additionally, pursuant to California Civil Code sections 1788.30 and 1788.17, Plaintiff, the California Subclass, and the California Successor Subclass are entitled to recover all attorneys' fees, costs, and expenses incurred in the bringing of this action.

## VII.

## JURY DEMAND

125. Plaintiff respectfully requests a trial by jury on all issues so triable.

## VIII.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and the Classes, respectfully requests this Court to award against Defendant in favor of Plaintiff and the Class all of the following:

a. Certifying Plaintiff's claims for class treatment under Federal Rules of Civil Procedure 23;

b. Appointing Plaintiff as Class Representative, and appointing Plaintiff's attorneys as counsel for the Classes;

c. Awarding declaratory relief as permitted by law;

d. Awarding injunctive and declaratory relief, to the extent available, requiring lawful and timely handling of payoff-statement and payoff-information requests;

e. Awarding restitution and other equitable relief, to the extent available;

f. Awarding actual damages, statutory damages where available, and all other recoverable monetary relief;

g. Awarding prejudgment interest as permitted by law;

h. Awarding attorneys' fees and costs as permitted by law; and

i. Awarding such other and further relief as the Court deems just and proper.

Dated: May 18, 2026

Respectfully submitted,

*<u>/s/ Robert Mackey</u>*
Robert Mackey (Cal Bar 125961)
LAW OFFICES OF ROBERT MACKEY
16320 Murphy Road
Sonora, CA 95370
Tel: (412) 370-9110
bobmackeyesq@aol.com

Matt Smith
**Migliaccio & Rathod LLP**
412 H Street NE
Washington, DC 20002

Tel: (202) 470-3520
nmigliaccio@classlawdc.com
jrathod@classlawdc.com

Scott David Hirsch (*pro hac vice forthcoming*)
**SCOTT HIRSCH LAW GROUP PLLC**
1 Research Court, Suite 450
Rockville, MD 20850
Tel: (301) 569-1339
scott@scotthirschlawgroup.com